OPINION
This timely appeal arises from a December 7, 1998, Judgment Entry by the Noble County Court of Common Pleas, Noble County, Ohio, denying Appellant's motion for summary judgment and granting Appellee's motion for summary judgment. On appeal, Appellant argues that the trial court committed reversible error when it determined that Appellant was not uninsured/underinsured as defined by his automobile insurance policy with Appellee. For all of the following reasons, this Court affirms the judgment of the trial court.
The following facts are not disputed by the parties and are gleaned entirely from the Agreed Statement of Facts filed by the parties with the trial court on September 11, 1998. On July 28, 1996, Julie Brown was a passenger in a vehicle owned by James Greathouse and operated by Brandi Gifford. A vehicle owned by Richard Saliba and operated by his intoxicated minor son, Kevin Saliba, collided with the Greathouse automobile. Julie Brown and Brandi Gifford both died from the injuries they sustained in the collision. The negligence of Kevin Saliba ("tortfeasor") was the proximate cause of the collision. Jon N. Brown ("Appellant") is the duly appointed administrator of the estate of his daughter, Julie Brown, deceased.
At the time of the accident, the tortfeasor was covered under an automobile insurance policy issued by Lightning Rod Insurance Company with policy limits of $100,000.00 per person and $300,000.00 per occurrence. Brandi Gifford had a primary liability insurance policy with State Farm Insurance Company which provided insurance coverage with liability limits of $50,000.00 per person and $100,000.00 per occurrence. One of the defendants below, Justin Moore, who allegedly supplied the alcohol to the tortfeasor, had a liability insurance policy in the amount of $100,000.00, written by Grange Mutual Insurance Company.
Appellant settled various claims against each of the allegedly liable parties in the following amounts:
1. Claims against the tortfeasor settled for $100,000.00.
2. Claims against James Greathouse settled for $50,000.00.
3. Claims against Brandi Gifford settled for $50,000.00.
 4. Claims against Appellant's homeowner's policy settled for $50,000.00.
5. Claims against Justin Moore settled for $4,000.00.
After settling the foregoing claims for an aggregate amount of $254,000.00, Appellant filed a claim for UM/UIM coverage under his own insurance policy issued by Nationwide Insurance ("Appellee"), with applicable coverage limits of $100,000.00 per person and $300,000.00 per occurrence. Appellee denied the claim and on January 21, 1997, Appellant filed suit. On March 23, 1998, Appellant filed a motion for summary judgment seeking a declaration that UM/UIM coverage was available under the policy issued by Appellee. On April 15, 1998, Appellee responded by filing a memorandum in opposition as well as filing its own motion for summary judgment. The trial court denied Appellant's motion and on December 7, 1998, granted Appellee's motion. In so doing, the trial court concluded that Appellant was not uninsured or underinsured for purposes of maintaining a UM/UIM claim against Appellee.
It is this judgment which forms the basis of the present appeal. In his sole assignment of error, Appellant argues that:
 "THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND HOLDING THAT DEFENDANT WAS ENTITLED TO A SET-OFF FROM ITS UNDERINSURED MOTORIST POLICY LIMIT OF THE TOTAL AMOUNTS PAID BY THIRD PARTIES REGARDLESS OF THE AMOUNTS ACTUALLY `AVAILABLE FOR PAYMENT' TO THE INDIVIDUAL INSUREDS."
As a preliminary matter, this Court notes that the underlying claim sought declaratory judgment to determine the rights, status and other pertinent legal relationships between Appellant, as the insured, and Appellee, as the insurer. When an action for a declaratory judgment is disposed of via summary judgment, the proper standard of review is de novo under the standards set forth in Civ.R. 56 (C). Hoicowitz v. Positive Edn.Program (1994), 96 Ohio App.3d 363, 366. Summary judgment under Civil Rule 56 is only proper when the movant demonstrates that:
 "(1) No genuine issue as to any material fact remains to be litigated;
 "(2) the moving party is entitled to judgment as a matter of law; and
 "(3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346.
Appellant argues that in order to resolve the issue presented in this appeal the Court must first determine the proper method of calculating the set-off provision of Ohio's Uninsured/Underinsured Motorist Statute codified in R.C. § 3937.18, as amended by S.B. 20, when the claim involves a decedent survived by multiple next of kin each asserting separate claims as insureds under a UM/UIM policy. Appellant argues that, "the total amount paid by third parties is irrelevant in determining the amount of the set-off in a wrongful death case." (Appellant's Brief, p. 6). Citing this Court's decision in King v. Western Reserve Group (December 1, 1997), Monroe App. No. 789, unreported, Appellant suggests that each next of kin has a separate claim and that when multiple claimants exhaust the tortfeasor's liability limits, the UM/UIM set-off is the amount actually paid to each claimant.
Appellee, however, contends that this Court need not address the set off provision of R.C. § 3937.18 as Appellants do not meet the threshold requirement; that is, they are not uninsured/underinsureds as defined by that statute. Appellee argues, and the trial court agreed, that the total recovery by the estate of the deceased must be compared to the applicable liability limit of the UM/UIM policy in order to determine the availability of UM/UIM coverage. Both parties agree that R.C. § 3937.18, as amended by S.B. 20. is the controlling law and further agree that Appellee's liability, if any, is limited to the $100,000.00, per person cap. The only dispute concerns the manner in which the amended version of R.C. § 3937.18 is to be applied.
Our reading of the applicable law supports the trial court decision here. It is true that the Ohio Supreme Court previously has held that when there are multiple claimants in a wrongful death case, each person who is covered under the applicable UM/UIM policy has a separate claim subject to a separate per person policy limit. Savoie v. Grange MutualInsurance Co. (1993), 67 Ohio St.3d 500, at syllabus. In response to this judicial pronouncement, however, the General Assembly passed Senate Bill 20 ("S.B. 20"), with the explicit purpose of:
 "supersed[ing] the effect of the holding of the Ohio Supreme Court in the October 1, 1993 decision in Savoie v. Grange Mut. Ins. Co.
(1993), 67 Ohio St.3d 500, relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage."
Section 7, Am.Sub. S.B. No. 20, 145 Ohio Laws, Part I, 204, 208. The amendments to R.C. § 3937.18 also included the following pertinent provision which articulates the purpose behind UIM/UM coverage:
 "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorists coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
R.C. § 3937.18 (A) (2). (Emphasis added)
The plain language of the above cited statute clearly indicates that UM/UIM coverage is available only when the total available liability insurance limits are less than the applicable UM/UIM limits. The statutorily mandated parameters of UM/UIM availability are also reflected in the language of the insurance policy issued by Appellee which defines an uninsured motor vehicle as:
 "One which is underinsured. This is a motor vehicle for which bodily injury liability coverage or bonds are in effect; however, their total amount is less than the limits of this coverage."
Nationwide's Century II Auto Policy, Endorsement 2352. (Emphasis added). While Appellant here characterizes the estate as "underinsured," under the policy, an uninsured motorist is defined as an underinsured motorist.
The policy language, consistent with R.C. § 3937.18, clearly contemplates comparing the total available liability coverage limitations with the policy limits of the UIM/UM policy. It is only when the total amount of liability coverage available for payment is less than the relevant UIM/UM policy limits that a valid UIM/UM claim exists. Contrary to Appellant's position, this is a threshold matter which must be satisfied before conducting the type of set-off analysis Appellant urges this Court to undertake.
With the proper analytical framework for examining the validity of a UIM/UM claim set forth, this Court notes that the total of $600,000.00 available in liability coverage for payment as well as the actual recovery by Appellant of $254,000.00, are both well in excess of the $100,000.00 UIM/UM policy limits at issue here. Therefore, pursuant to the express terms of R.C. § 3937.18 (A) (2) as well as the plain language contained in the policy, Appellant is not uninsured or underinsured and is not entitled to UIM/UM benefits, even under the set-off formula advocated by Appellant.
Appellant maintains, however, that as this case involves a wrongful death action, each statutory beneficiary presumed to suffer damages as described in R.C. Chapter 2125. et seq., have separate claims. Appellant urges the position that insurers must apply set offs to the individual claims rather than apply the collective set off to the entire claim in the aggregate. Consistent with this argument, Appellant suggests that each beneficiary who received less than $100,000.00 is underinsured and is therefore entitled to benefits under the UIM/UM policy. In support of this position, Appellant cites to our decision inKing, supra, where this Court viewed each wrongful death beneficiary as having a separate claim entitled to a separate "per person" limit.
Our review and comprehensive analysis of the cited portion of King, supra, in light of the recent plethora of interpretive case law, convinces this Court that King is easily distinguished from the case at bar based on the policy language relevant in the two cases.
R.C. § 3937.18 (H) provides in pertinent part:
 "Any automobile liability . . . policy of insurance . . . may, notwithstanding Chapter 2125 of the Ohio Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
Id. (Emphasis added).
It is clear that pursuant to the plain language of the cited statutory section, an insurer may include language in the insurance policy that effectively limits multiple wrongful death claimants to a single claim. Plott v. Colonial Ins. Co. (1998),126 Ohio App.3d 417. Having concluded that an insurer is statutorily permitted to include this limitation in the policy, this Court must determine whether the insurer did in fact include this limiting language. We answer that question in the affirmative.
The UM/UIM policy at issue contains the following provision:
 "Bodily injury limits shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence. The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence."
(Nationwide's Century II Auto Policy, Endorsement 2352). (Emphasis added).
This provision clearly limits the multiple wrongful death claimants to the insurance policy's single "per person" claim when one person suffers death as the result of one occurrence, which is contemplated and authorized by R.C. § 3937.18 (H). As a result, the decedent's next of kin in the case at bar are collectively limited to the single "per person limit" of $100,000.00 as reflected in the applicable UIM/UM policy.
It must be observed that since deciding King, supra, this Court has rendered decisions which implicitly recognized the permissibility of consolidating multiple wrongful death claimants into a single claim. See, e.g., Powers v. NationwideMutual Ins. Co. (December 6, 1999), Mahoning App. No. 97 CA 219, unreported. This interpretation of R.C. § 3937.18 (A) parallels those of our sister districts who have had occasion to pass upon this very issue. See, e.g., Welsh v. Sherwood (March 9, 1998), Stark App. Nos. 1997CA00317, 1997CA00323, unreported; Smock v.Hall (January 15, 1999), Geauga App. No. 97-G-2090, unreported;Karr v. Borchardt (December 24, 1998), Seneca App. No. 13-98-36.
We must note, however, that while it is clear that R.C. § 3937.18 (H) allows a policy of insurance to effectively limit multiple wrongful death claimants to a single claim, there is nothing in the King case to indicate that the policy at issue inKing did so limit those claimants accordingly. On. this basis,King can be distinguished from and is inapplicable to the case at bar.
Finally, this Court notes that the Ohio Supreme Court has handed down two recent decisions, Wolfe v. Wolfe (2000), 88 Ohio St.3d 246
and Moore v. State Auto Mut. Ins. Co. (2000), 88 Ohio St.3d 27, involving S.B. 20. Based on the holdings of Wolfe andMoore, the Supreme Court has remanded a few of our cases for a decision as to the impact of their decisions on these UIM/UM cases. See, for example, Spence v. Natl. Mut. Ins. Co. (2000),88 Ohio St.3d 403; Lumbatis v. Grange Mut. Cas. Co. (2000),88 Ohio St.3d 403. Neither Wolfe nor Moore, however, address the issues presently before us and do not impact on the disposition of the instant appeal.
In conclusion, this Court agrees with the trial court's ruling that Appellant is not uninsured or underinsured as defined by R.C. § 3937.18 (A) (2). Appellant's inability to satisfy this threshold requirement renders the question as to the proper means of calculating the applicable statutory setoff, moot. As such, Appellant's assignment of error is overruled and the judgment of the Noble County Court of Common Pleas is hereby affirmed.
Vukovich, J., concurs, Donofrio, J., concurs.
 ______________________ CHERYL L. WAITE, JUDGE